PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID GUERRERO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASPEN BRASS LLC d/b/a ASPEN GLOBAL PRODUCTS; GUKITA SURPLUS LLC d/b/a NUTRAVIBE; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 8:26-cv-2495<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (Injunctive Relief Only at Present);**<br>**2. Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.;**<br>**3. Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.;**<br>**4. Breach of Express Warranty;**<br>**5. Unjust Enrichment / Quasi-Contract.** |

## CLASS ACTION COMPLAINT

Plaintiff David Guerrero ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following against Defendants Aspen Brass LLC d/b/a Aspen Global Products ("Aspen Brass"), Gukita Surplus LLC d/b/a NutraVibe ("Nutravibe"), and Does 1 through 20 (collectively, "Defendants"), based on personal knowledge as to his own acts and experiences and on information and belief as to all other matters.

## I. NATURE OF ACTION

1. This is a false-advertising class action concerning two confusingly similar cognitive-supplement products marketed under the names NeuroPeak and Neuro-Peak. The consumer-acquisition pathway alleged here began with an extraordinary digital advertising campaign for Aspen Brass's NeuroPeak that used fabricated news-style content and AI/deepfake-style videos to make consumers believe that trusted news organizations, medical authorities, veterans, and other apparently real speakers endorsed or validated the product. It ended with Plaintiff purchasing Gukita's NutraVibe Neuro-Peak after searching for the advertised product by name.

2. Plaintiff purchased the NutraVibe Neuro-Peak product after seeing an online AI/deepfake-style advertisement for NeuroPeak that presented the product as capable of delivering meaningful cognitive and memory benefits. The synthetic or fabricated nature of the presentation was not disclosed in a manner that would alert an ordinary consumer that the apparent speaker, endorsement, broadcast, or testimonial was not authentic. Plaintiff reasonably understood the advertisement as conveying real-world validation of a product called NeuroPeak and relied on that impression in deciding to seek out and purchase the product by that name.

3. The deception was reinforced at the point of sale. The Neuro-Peak bottle Plaintiff purchased prominently states that the product supports "RECALL," "PRODUCTIVITY," and "FOCUS" and is marketed for "optimal brain support." Those are objective cognitive-performance representations, not meaningless puffery.

4. Aspen Brass is publicly identified as the seller/operator of a NeuroPeak capsule product promoted through NeuroPeak-branded direct-response advertising.

5. Gukita, doing business as NutraVibe, separately sold Plaintiff a materially similarly named "NEURO-PEAK By NutraVibe" product through Walmart.com. Aspen Brass's deceptive NeuroPeak advertising induced Plaintiff to seek out the product name NeuroPeak/Neuro-Peak. NutraVibe then captured and monetized that demand by offering a cognitive supplement under the same material product name and by repeating the same core promises of memory, recall, focus, and brain support. Plaintiff purchased the NutraVibe product believing it was the advertised product or the same materially represented cognitive-support product.

6. Publicly available evidence corroborates the use of fabricated news-style NeuroPeak advertising. A publicly archived NeuroPeak creative uses the CBS News logo and the headline "CBS News Special: 98-Year-Old Veteran Reveals 30-Second Morning Ritual That Reversed His Memory Loss," then directs viewers to "WATCH THE FULL PRESENTATION NOW." The campaign presents advertising as a purported CBS broadcast and attributes dramatic memory-restoration claims to an elderly veteran and unnamed neuroscientists. The advertisement links through NeuroPeak-branded infrastructure rather than to CBS News.

7. Aspen Brass's own commercial materials identify it as the operator/seller of its NeuroPeak product and direct consumers to a NeuroPeak checkout. On information and belief, Aspen Brass created, supplied, approved, authorized, paid for, disseminated, ratified, or knowingly accepted the benefits of the NeuroPeak advertising campaign used to generate consumer demand for that product name, including advertising placed by affiliates, media buyers, publishers, and other agents whose campaigns could be tracked through affiliate and conversion identifiers. Plaintiff does not presently allege that Aspen Brass and Gukita are the same entity or that their formulations are identical. Plaintiff alleges a linked consumer-acquisition transaction: Aspen Brass's deceptive campaign generated demand for "NeuroPeak," and NutraVibe knowingly captured and converted

that demand by selling a materially similarly named cognitive supplement carrying substantially the same performance message.

8. Plaintiff brings this action to stop Defendants from using, participating in, knowingly exploiting, or monetizing false, misleading, unsubstantiated, fabricated-news, AI/deepfake, and cognitive-performance representations to sell NeuroPeak/Neuro-Peak products and to recover restitution and other relief for consumers who paid money because of the challenged scheme.

## II. PARTIES

9. Plaintiff David Guerrero is a citizen and resident of California. Plaintiff resides in Los Angeles County. Plaintiff purchased Neuro-Peak in August of 2026 while in California and paid approximately $21.70 for the product.

10. Plaintiff purchased Neuro-Peak after seeing an online advertisement that presented Neuro-Peak as a brain-support product and used AI/deepfake-style or otherwise fabricated advertising to induce consumers to believe the product had real cognitive benefits. Plaintiff reviewed the product's labeling and relied on the representation that Neuro-Peak was for "optimal brain support" and supported "recall," "productivity," and "focus."

11. Defendant Gukita Surplus LLC is, on information and belief, a Wyoming limited liability company that does business as NutraVibe and sells dietary supplements to consumers throughout the United States, including California, through Walmart Marketplace and other internet channels.

12. Public marketplace pages identify NutraVibe as a supplement seller and identify Gukita Surplus LLC as the business behind the NutraVibe seller account, with a business address at 5830 E. 2nd Street, Casper, Wyoming 82609. Plaintiff purchased the challenged NutraVibe Neuro-Peak product through Walmart.com. Public trademark records also confirm the commercial use of the NUTRAVIBE name for dietary and nutritional supplements. To the extent discovery establishes that another affiliated,

successor, or commonly controlled entity presently owns or operates the NutraVibe business or the Neuro-Peak listing, Plaintiff will amend to name that entity.

13. Defendant Aspen Brass LLC is, on information and belief, a Wyoming limited liability company doing business as Aspen Global Products. NeuroPeak's Terms of Service and Privacy Policy identify Aspen Brass LLC d/b/a Aspen Global Products as the operating entity for the NeuroPeak capsule product, and NeuroPeak materials list customer-service contacts associated with Aspen Brass, including care@aspensupps.com and a return/business address at 1309 Coffeen Ave., Ste. 1200, Sheridan, Wyoming 82801.

14. Aspen Brass is not a remote stranger to the advertising that induced Plaintiff. It operates or controls a NeuroPeak direct-response checkout, sets or approves the claims used to sell its NeuroPeak product, receives revenue from its NeuroPeak sales, and uses or authorizes digital advertising to generate NeuroPeak traffic and conversions. A July 2026 paid NeuroPeak advertorial expressly identifies Aspen Brass LLC d/b/a Aspen Global Products as the seller entity tied to the NeuroPeak product and states that consumers may encounter NeuroPeak through Facebook, Instagram, or short-form video advertising promising sharper focus and clearer memory.

15. On information and belief, Aspen Brass uses affiliates, media buyers, advertising networks, publishers, and/or other third parties to acquire NeuroPeak customers. Aspen Brass has the ability to approve, reject, monitor, attribute, and financially reconcile traffic and conversions generated by those sources. To the extent a third-party affiliate or media buyer physically produced or placed a particular AI/deepfake advertisement, Aspen Brass is liable for its own participation, authorization, ratification, or knowing acceptance of the benefits of deceptive NeuroPeak advertising. The particular contracts, campaign dashboards, creative approvals, attribution data, and commission records are uniquely within Aspen Brass's possession.

16. The true names and capacities of Defendants sued herein as Does 1 through 20 are presently unknown to Plaintiff. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Each Doe Defendants participated in,

authorized, approved, disseminated, sold through, profited from, or otherwise bears responsibility for the challenged conduct.

## III. JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). This is a putative class action with at least 100 proposed class members, minimal diversity exists, and the aggregate amount placed in controversy by the claims of the proposed Class exceeds $5,000,000, exclusive of interest and costs.

18. Minimal diversity exists because Plaintiff is a citizen of California and, on information and belief, at least one member of at least one Defendant limited liability company is a citizen of a state other than California. The identities and citizenship of Defendants' members are peculiarly within Defendants' possession. Plaintiff will amend these allegations if jurisdictional discovery identifies additional citizenship facts.

19. The amount in controversy exceeds $5,000,000 when the monetary and equitable relief sought on behalf of the proposed Class is aggregated. NeuroPeak is marketed nationally through direct-response advertising and major online marketplaces, and the challenged representations concern a standardized product and a scalable digital campaign. Plaintiff alleges on information and belief that the number and value of affected transactions, together with restitution, statutory remedies when available, attorneys' fees where recoverable, and the value of the requested injunctive relief, exceed CAFA's threshold.

20. This Court has personal jurisdiction over Gukita because Gukita purposefully availed itself of the California market by offering Neuro-Peak for sale to California residents through Walmart.com and other online channels, accepting California orders, shipping products into California, and deriving revenue from those transactions. Plaintiff's claims arise directly from Gukita's California-directed sale of the product to Plaintiff in Los Angeles County.

21. This Court has specific personal jurisdiction over Aspen Brass because Aspen Brass purposefully directed NeuroPeak advertising into California, including digital advertising delivered to Plaintiff while he was in Los Angeles County; operates a nationwide direct-response NeuroPeak sales funnel that accepts California customers; includes California in the geographic market for its online advertising and sales; and derives or seeks to derive revenue from California purchasers. Plaintiff's injury arises directly from the NeuroPeak advertising that reached him in California and caused him to spend money seeking the advertised cognitive product.

22. Exercising jurisdiction over Aspen Brass is fair and reasonable. California has a strong interest in protecting its residents from deceptive supplement advertising and undisclosed synthetic endorsements. Aspen Brass could reasonably anticipate being haled into a California court when it deliberately markets a consumer health product nationwide, including into California, through digital advertising and direct-response commerce.

23. Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in Los Angeles County, viewed the challenged advertising in this District, purchased and received Neuro-Peak in this District, and suffered economic injury here. A substantial part of the events or omissions giving rise to the claims occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A. Defendants Market NeuroPeak/Neuro-Peak as Brain Products

24. Two similarly named cognitive-supplement products are relevant to this action. The physical product Plaintiff purchased from Gukita is branded "NEURO-PEAK By NutraVibe" and prominently advertises that it supports "RECALL," "PRODUCTIVITY," and "FOCUS." Aspen Brass separately operates and markets a NeuroPeak capsule product through NeuroPeak-branded direct-response infrastructure. The similarity of the names and cognitive positioning is central, not incidental: Plaintiff first encountered "NeuroPeak" through the challenged digital advertising, searched for the advertised product by name, and then purchased NutraVibe's Neuro-Peak on

Walmart.com believing it was the advertised product or materially the same cognitive-support product.

25. The label also states that the bottle contains 60 capsules and identifies the product as a dietary supplement. The back label identifies the serving size as two capsules and the servings per container as thirty.

26. The Supplement Facts panel identifies a single "Proprietary Blend" totaling 1000 mg per serving. The blend includes L-Lysine HCl, Apple Cider Vinegar fruit, Garcinia Cambogia powder, Tongkat Ali extract root, Horny Goat Weed plant, Wild Yam extract root, Cinnamon extract bark, Bitter Melon extract fruit, and Raspberry Ketones.

27. Because the product uses a proprietary blend, the label does not disclose the amount of each ingredient. Consumers therefore cannot determine whether any ingredient is present in an amount capable of producing the advertised cognitive benefits.

28. On information and belief, Defendants intentionally use overlapping cognitive-benefit words such as "recall," "productivity," "focus," "memory," "concentration," "brain support," "clarity," and "everyday sharpness" because those words cause consumers to believe NeuroPeak/Neuro-Peak products can meaningfully improve or support mental performance. The overlap between Aspen Brass's acquisition claims and NutraVibe's point-of-sale claims also increases the likelihood that a consumer induced by Aspen Brass's advertising will treat the NutraVibe listing as the same advertised product or a materially equivalent source of the advertised benefits.

29. Public Walmart pages for NutraVibe identify Neuro-Peak products as "Neuro-Peak Pills – Daily Formula with a Natural Blend to Help Maintain Focus, Memory & Concentration" and as capsules for "Everyday Sharpness." These representations are consistent with the cognitive-benefit message Plaintiff saw before purchasing.

**B. The Cognitive Claims Are False**

30. The challenged representations are false or misleading because they communicate that Neuro-Peak is formulated, tested, or otherwise capable of delivering real cognitive benefits relating to recall, productivity, focus, memory, concentration,

everyday sharpness, or optimal brain support, despite the absence of competent and reliable finished-product evidence establishing those advertised results for the formula Plaintiff purchased.

31. Reasonable consumers understand those claims as performance claims. A consumer buying a brain supplement does not interpret "supports recall" and "supports focus" to mean only that the product is a generic collection of herbs with no demonstrated ability to support recall or focus. Consumers understand the statements as representing that the product is capable of providing the advertised cognitive support.

32. The scientific record does not substantiate NutraVibe's product-level performance claims. NutraVibe's disclosed formula is a 1,000 mg proprietary blend of nine ingredients, yet the label does not disclose the amount of any individual ingredient and identifies no completed clinical trial of the finished Neuro-Peak formulation. Even the limited human literature concerning one listed ingredient, L-lysine, does not establish the advertised benefits: a small randomized crossover pilot used 6 grams per day—at least six times the weight of NutraVibe's entire nine-ingredient blend—and found that several standard cognitive measures were not significantly affected, while an apparent improvement on one test was described as probably biased by training. *See Caroline Wass et al.*, L-Lysine as *Adjunctive Treatment in Patients with Schizophrenia: A Single-Blinded, Randomized, Cross-Over Pilot Study*, 9 BMC Med. 40 (2011).

33. The deception is material because cognitive benefit is the reason consumers buy brain supplements. Consumers are willing to pay more for a product that they believe will support recall, focus, memory, concentration, productivity, and mental sharpness.

**C. Plaintiff's Purchase and Reliance**

34. Plaintiff saw an online NeuroPeak advertisement while physically present in Los Angeles County. The advertisement used artificial-intelligence/deepfake-style or otherwise synthetic audiovisual content and presented the apparent speaker, endorsement, or broadcast as authentic rather than as a fabricated promotional device. The advertisement represented NeuroPeak as a brain-support product capable of producing meaningful

cognitive and memory benefits. Plaintiff believed the apparent presentation was genuine and relied on the NeuroPeak name and cognitive-benefit message. A publicly archived example of the same type of NeuroPeak fake-news/deepfake advertising follows. Plaintiff alleges that the advertisement he saw used the same or materially similar CBS-style/deepfake presentation:

# CBS News Special: 98-Year-Old Veteran Reveals 30-Second Morning Ritual That Reversed His Memory Loss

In an emotional CBS News report that has captivated viewers nationwide, a 98-year-old WWII veteran stepped forward with a powerful message for anyone struggling with memory loss: "I need to reveal something."
After years of worsening brain fog and struggling to recognize loved ones, he restored his sharp mental recall using a simple, 100% natural 30-second morning ritual developed by top neuroscientists.




AS FEATURED IN

According to medical researchers behind NeuroPeak Brain, age-related memory loss isn't an inevitable part of aging—it is caused by a build-up of toxic neural waste blocking brain signals.

By introducing a specific combination of natural brain-activating nutrients every morning, thousands of seniors are clearing decades of brain fog and restoring total mental clarity in as little as 30 days.

Family members report incredible turnarounds—parents following complex conversations again, remembering past memories clearly, and reclaiming their independence without pharmaceutical side effects.

Watch the complete CBS broadcast now to discover the exact 30-second daily ritual and see how NeuroPeak Brain can help restore your mental sharpness today.

**WATCH THE FULL PRESENTATION NOW**

---

The information provided is for educational purposes only and is not intended as medical advice. Individual results may vary.

Unsubscribe from future emails

© NeuroPeak Brain Research 2026. All Rights Reserved.

35. The advertisement linked to a deepfake/AI video purporting to be from CBS News that presented NeuroPeak as a purported breakthrough for memory and cognition. That deception caused Plaintiff to seek out NeuroPeak. He first attempted to locate the advertised product in person. When he could not find it, he searched online and encountered the materially similarly named NutraVibe "NEURO-PEAK" product on Walmart.com. Because the product used the same material NeuroPeak/Neuro-Peak name and was marketed for the same core cognitive benefits, Plaintiff believed it was the advertised product or materially the same product and purchased it for approximately $21.70.

36. Plaintiff's purchase decision therefore resulted from two linked and mutually reinforcing deceptions. Aspen Brass's NeuroPeak advertising created the demand and induced Plaintiff to seek a cognitive product called NeuroPeak by name. NutraVibe then converted that induced demand into a sale by offering a materially similarly named Neuro-

Peak product and reinforcing the same core cognitive-benefit message through "optimal brain support" and claims of support for recall, productivity, and focus.

37. Plaintiff purchased and used Neuro-Peak. After investigating further, Plaintiff concluded that he had been induced by a fabricated/deepfake-style advertisement and had paid for a product that did not deliver the represented cognitive value.

38. Plaintiff would not have spent $21.70 on the NutraVibe Neuro-Peak product, or would have paid less, had Aspen Brass not induced him to seek NeuroPeak through the challenged AI/deepfake-style advertising and had NutraVibe not captured that demand and reinforced the cognitive-benefit claims at the point of sale. Plaintiff's economic injury is therefore traceable to each Defendant's own conduct in the same acquisition-to-sale sequence.

39. Plaintiff remains interested in purchasing lawful, accurately labeled cognitive-support supplements in the future but cannot rely on Defendants' advertising or labeling unless Defendants are enjoined from using the challenged misleading representations.

### D. Public Evidence of Deepfake-Style NeuroPeak Advertising

40. The challenged NeuroPeak acquisition campaign uses fabricated, synthetic, AI/deepfake-style, and fake-news advertising to induce consumers to seek out NeuroPeak. Public internet evidence corroborates that NeuroPeak is promoted through exactly this type of deceptive creative.

41. For example, a publicly archived NeuroPeak advertisement reproduces the CBS News logo and uses the headline "CBS News Special: 98-Year-Old Veteran Reveals 30-Second Morning Ritual That Reversed His Memory Loss." The underlying HTML identifies the creative as a NeuroPeak Brain "Special Report" and links the CBS-branded graphic to NeuroPeak-branded hosting infrastructure.

42. The fake story tells consumers that a 98-year-old World War II veteran supposedly restored his memory using a natural "30-second morning ritual developed by top neuroscientists," claims age-related memory loss results from "toxic neural waste,"

and promises restored mental clarity. Those are concrete medical and cognitive representations presented through the appearance of independent journalism rather than disclosed advertising.

43. The creative directs consumers to "WATCH THE FULL PRESENTATION NOW," reinforcing the false impression that the consumer is being invited to view an authentic CBS News broadcast rather than a sales presentation. The use of the CBS mark, a purported elderly veteran, medical-research framing, and broadcast-style presentation materially increases the credibility of the underlying product claims.

44. Aspen Brass is publicly identified as the seller/operator of its NeuroPeak capsule product in NeuroPeak's legal and checkout materials. A July 2026 NeuroPeak paid advertorial likewise identifies Aspen Brass LLC d/b/a Aspen Global Products as the seller entity and states that consumers may first encounter NeuroPeak through Facebook, Instagram, or short-form video advertising promising sharper focus and clearer memory. The same public advertising ecosystem includes a NeuroPeak creative masquerading as CBS News and directing consumers to a NeuroPeak-branded presentation. Those facts corroborate Plaintiff's firsthand allegation that NeuroPeak was being promoted through synthetic or fabricated audiovisual advertising rather than ordinary disclosed advertising.

45. On information and belief, the affiliate and campaign identifiers used in NeuroPeak advertising allow Aspen Brass and its agents to attribute traffic and sales to particular publishers, media buyers, creatives, and traffic sources. Accordingly, Aspen Brass knew or had the means to know which campaigns generated NeuroPeak interest and conversions and retained the resulting benefits. If an affiliate created a particular deepfake without Aspen Brass employees physically editing the video, Aspen Brass nevertheless authorized, ratified, materially participated in, or knowingly benefited from the campaign to the extent it accepted and monetized attributed traffic while retaining the practical ability to police its acquisition sources.

46. The precise identity of the person or entity that generated each synthetic video, the advertising-account ownership, creative approvals, affiliate contracts, campaign

IDs, commission payments, conversion logs, and communications concerning the challenged ads are uniquely within Defendants' possession. Plaintiff therefore pleads those matters on information and belief and will establish them through discovery. Plaintiff does not allege merely that Aspen Brass happens to sell a similarly named product; he alleges that Aspen Brass is publicly identified as the seller/operator of the NeuroPeak product promoted through the challenged direct-response ecosystem.

**E. NutraVibe Knowingly Captures and Monetizes Demand Generated by Aspen Brass's Deceptive Campaign**

47. On information and belief, NutraVibe knew that substantial online demand existed for a cognitive supplement marketed under the name NeuroPeak. That knowledge may be inferred not merely from the similarity of the product names, but from NutraVibe's deliberate use of the materially same "Neuro-Peak" name in the same cognitive-supplement category, its nationwide marketplace sales, and the traffic, search-term, referral, conversion, customer-service, and sales information available to an online marketplace seller. Plaintiff's transaction demonstrates the mechanism: Aspen Brass's deceptive advertising created the demand; Plaintiff searched for NeuroPeak; and NutraVibe received the resulting sale.

48. NutraVibe's role was not that of a passive payment processor or a remote business that happened to benefit incidentally from another company's misconduct. NutraVibe itself supplied the product name, package, marketplace listing, and cognitive-performance representations that converted NeuroPeak demand into NutraVibe revenue. It therefore participated in the consumer-facing transaction at the precise point where the deception generated by Aspen Brass was monetized.

49. On information and belief, NutraVibe knew, or consciously avoided learning, that consumers searching for NeuroPeak were being exposed to sensational external advertising promising memory, focus, clarity, and related cognitive benefits. The public NeuroPeak campaign was readily discoverable; the product-name overlap was obvious; and marketplace analytics and customer communications provided additional means to

identify why consumers were searching for and purchasing a product bearing that name. Yet NutraVibe continued to use the Neuro-Peak name and materially overlapping cognitive claims without a conspicuous distinction that would prevent consumers induced by Aspen Brass's campaign from believing they had found the advertised product or its materially equivalent counterpart.

50. NutraVibe also had a direct financial incentive to permit that confusion to persist. Every consumer diverted by Aspen Brass's advertising who purchased NutraVibe Neuro-Peak produced revenue for NutraVibe without NutraVibe bearing the full cost of generating the underlying demand. On information and belief, NutraVibe accepted and retained that revenue with knowledge of the circumstances generating at least a portion of the demand for the NeuroPeak/Neuro-Peak name.

51. Plaintiff therefore does not seek to impose liability on Gukita merely because it benefited from conduct by Aspen Brass. Plaintiff alleges Gukita's own knowing participation: it selected and used a materially confusing product name, repeated substantially the same cognitive-performance message, sold into the same online demand stream, accepted the resulting purchases, and retained the proceeds. To the extent discovery further establishes coordination, traffic sharing, affiliate routing, common vendors, communications, or other concerted conduct between Aspen Brass, Gukita, or their acquisition partners, those facts will provide additional evidence of a common marketing scheme and will be pleaded accordingly.

52. California unfair-competition and false-advertising liability is properly directed at a defendant's own participation in unlawful marketing conduct rather than mere status or passive association. NutraVibe's own conduct in knowingly converting demand generated by the challenged NeuroPeak advertising into sales through the materially similarly named product and overlapping cognitive claims is unlawful.

**F. The Advertising Is Likely to Deceive Reasonable Consumers**

53. Reasonable consumers are likely to be deceived by the challenged advertising and labeling because consumers cannot independently verify whether Neuro-Peak has

been clinically tested, whether its ingredients are present in effective amounts, whether the product is endorsed by news outlets or medical experts, or whether the online advertising is AI-generated or fabricated.

54. The challenged representations are especially harmful because they target older consumers and consumers concerned about memory, cognition, focus, and age-related decline. These consumers are particularly vulnerable to fake-news, fake-broadcast, veteran, doctor, scientist, and deepfake-style advertising that appears to validate a product's cognitive benefits.

55. Consumers do not expect a marketplace supplement sold through Walmart or other national platforms to be marketed through fabricated news broadcasts, AI/deepfake endorsements, or unsubstantiated claims about reversing memory loss or restoring mental clarity.

56. Defendants' misconduct caused Plaintiff and class members to pay money they otherwise would not have paid. Aspen Brass generated consumer demand through false or fabricated NeuroPeak advertising; NutraVibe captured and monetized that demand while independently repeating materially similar cognitive-performance promises at the point of sale. Plaintiff and class members therefore received products worth less than represented and were deprived of the benefit of their bargain.

## V. **<u>CLASS ACTION ALLEGATIONS</u>**

57. Plaintiff brings this action under Federal Rule of Civil Procedure 23 on behalf of two proposed California classes:

The "Aspen Advertising Class" consists of all persons in California who, during the applicable limitations period, purchased a NeuroPeak/Neuro-Peak-branded cognitive supplement for personal, family, or household use after exposure to a NeuroPeak advertisement disseminated or authorized by Aspen Brass that used fabricated-news, AI/deepfake, synthetic endorsement, or materially misleading cognitive-benefit representations.

The "NutraVibe Purchaser Class" consists of all persons in California who purchased the NutraVibe Neuro-Peak product during the applicable limitations period for personal, family, or household use.

58. Excluded from the Classes are Defendants; Defendants' officers, directors, members, managers, employees, agents, affiliates, and legal representatives; any entity in which a Defendant has a controlling interest; any judge assigned to this case; and members of the judge's immediate family.

59. The Classes are sufficiently numerous that joinder is impracticable. Aspen Brass markets NeuroPeak through scalable digital advertising and a national direct-response funnel, while Gukita sells NutraVibe Neuro-Peak through Walmart.com and other large online channels. The precise class sizes and sales attributable to particular advertising campaigns are within Defendants' records.

60. Common questions predominate within each proposed Class, including whether Aspen Brass disseminated, authorized, ratified, or knowingly accepted the benefits of fabricated-news or AI/deepfake-style NeuroPeak advertising; whether those representations were false or misleading; whether Aspen Brass possessed substantiation for its cognitive claims; whether Gukita/NutraVibe knowingly captured demand generated by NeuroPeak advertising through a materially similarly named product and overlapping cognitive claims; whether NutraVibe's standardized label and marketplace representations were false or misleading; whether the challenged representations were material; whether Defendants knew or should have known of the challenged practices; and whether classwide injunctive and restitutionary relief is appropriate.

61. Plaintiff's claims are typical because he saw and relied on the NeuroPeak advertising challenged as to the Aspen Advertising Class, then searched for NeuroPeak and purchased the NutraVibe Neuro-Peak product challenged as to the NutraVibe Purchaser Class. His experience exemplifies the linked acquisition-to-sale mechanism alleged here: deceptive NeuroPeak advertising created demand, and NutraVibe's materially similarly named product and overlapping cognitive claims converted that

demand into a purchase. He suffered the same type of economic injury alleged for each Class: money spent because of materially misleading cognitive-product advertising and marketing.

62. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to the Class and has retained counsel experienced in consumer protection and class-action litigation.

63. A class action is superior to individual actions because the amount at stake for each consumer is relatively small compared to the cost of individual litigation, while Defendants' aggregate misconduct is substantial. Class treatment will promote efficiency, consistency, and access to justice.

## VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violation of the Consumers Legal Remedies Act (Against Gukita)

### Cal. Civ. Code § 1750 et seq.

64. Plaintiff realleges and incorporates all preceding paragraphs.

65. Plaintiff and NutraVibe Purchaser Class members are consumers within the meaning of the CLRA because they purchased the NutraVibe Neuro-Peak product for personal, family, or household use.

66. Neuro-Peak is a good within the meaning of the CLRA.

67. Gukita violated the CLRA, including Civil Code sections 1770(a)(2), (3), (5), (7), (9), and (16), by, among other things, using the materially similar Neuro-Peak name and cognitive positioning in circumstances likely to misrepresent source, sponsorship, approval, affiliation, connection, or association; representing that the NutraVibe Neuro-Peak product has characteristics, benefits, uses, and qualities it does not have; representing it as being of a particular standard or quality when it is not; advertising it with intent not to sell it as represented; and representing that the transaction confers cognitive benefits it does not confer.

68. Gukita's representations were material. A reasonable consumer would consider the product's representations concerning recall, productivity, focus, memory, concentration, everyday sharpness, and optimal brain support important in deciding whether to purchase the product.

69. Plaintiff presently seeks injunctive relief only under the CLRA. Plaintiff does not presently seek CLRA damages. Plaintiff is serving the notice required by Civil Code section 1782 and intends, after expiration of the statutory thirty-day period absent an appropriate cure, to amend this Complaint to seek the damages and other monetary remedies authorized by the CLRA.

70. Plaintiff and the NutraVibe Purchaser Class are entitled to injunctive relief prohibiting Gukita from continuing to advertise, label, market, or sell NutraVibe Neuro-Peak using false, misleading, or unsubstantiated cognitive-performance representations.

## SECOND CAUSE OF ACTION

**Violation of the False Advertising Law (Against All Defendants)**

**Cal. Bus. & Prof. Code § 17500 et seq.**

71. Plaintiff realleges and incorporates all preceding paragraphs.

72. Aspen Brass made or caused to be made false and misleading advertising concerning NeuroPeak, including fabricated-news, synthetic-endorsement, AI/deepfake-style, and cognitive-benefit advertising. Gukita/NutraVibe independently participated in the same consumer-acquisition transaction by offering a materially similarly named cognitive supplement to consumers searching for NeuroPeak, by repeating materially overlapping cognitive-benefit claims at the point of sale, and, on information and belief, by knowingly accepting and retaining sales generated by external NeuroPeak advertising and search demand. Plaintiff does not premise Gukita's liability on passive association or status alone; he alleges Gukita's own knowing participation in converting the challenged advertising into consumer purchases.

73. Each Defendant knew or, in the exercise of reasonable care, should have known that the challenged representations it made, caused, adopted, repeated, or

knowingly used to obtain sales were false, misleading, fabricated, or inadequately substantiated. Aspen Brass knew or had the ability to know the creative used in its paid NeuroPeak acquisition campaigns and the source of traffic generated by affiliates or media buyers. Gukita knew the representations appearing on its Neuro-Peak bottle and marketplace listings and, on information and belief, knew from marketplace traffic, search, referral, conversion, customer-service, return, and sales data that consumers were arriving with preexisting demand for a product called NeuroPeak. Gukita nevertheless continued to use the materially similar name and overlapping cognitive promises and retained the resulting revenue.

74. The challenged statements were likely to deceive reasonable consumers and did deceive Plaintiff.

75. Plaintiff and Class members lost money or property as a result of Defendants' false advertising and participation in the challenged acquisition-to-sale sequence because they purchased NeuroPeak/Neuro-Peak products and paid money they otherwise would not have paid, or paid more than the products were worth.

76. Plaintiff seeks restitution, disgorgement, injunctive relief, attorneys' fees where available, costs, and all other relief permitted by law.

## <u>THIRD CAUSE OF ACTION</u>

**Violation of the Unfair Competition Law (Against All Defendants)**

**Cal. Bus. & Prof. Code § 17200 et seq.**

77. Plaintiff realleges and incorporates all preceding paragraphs.

78. Defendants engaged in unlawful, unfair, and fraudulent business acts and practices through their respective participation in the NeuroPeak/Neuro-Peak acquisition-to-sale sequence.

79. Defendants' conduct is unlawful because it violates the CLRA and FAL and, as to the NutraVibe product, California's Sherman Food, Drug, and Cosmetic Law, including Health and Safety Code section 110390, which makes it unlawful to disseminate a false advertisement of food, and section 110660, which deems food misbranded when

its labeling is false or misleading. Federal law independently requires a dietary-supplement manufacturer making structure/function claims to possess substantiation that the statements are truthful and not misleading. See 21 U.S.C. § 343(r)(6). Plaintiff does not assert a private FDCA cause of action; the federal requirement is alleged as regulatory context confirming the standard against which Defendants themselves purport to market the product.

80. Defendants' conduct is fraudulent because the challenged advertising and labeling are likely to deceive reasonable consumers.

81. Defendants' conduct is unfair because Aspen Brass generated consumer demand through fabricated-news or AI/deepfake-style advertising and unsubstantiated cognitive-performance claims, while Gukita/NutraVibe knowingly captured and monetized that demand through a materially similarly named product and repeated cognitive-performance claims at the point of sale. The practice deprives consumers of truthful information about both the source of the product and the evidence supporting the benefits for which they are paying.

82. Plaintiff lost money or property as a result of Defendants' conduct. Plaintiff purchased Neuro-Peak and paid money he would not have paid, or paid more than he otherwise would have paid, absent the deception.

83. Plaintiff seeks restitution, disgorgement, injunctive relief, attorneys' fees where available, costs, and all other relief permitted by law.

## **FOURTH CAUSE OF ACTION**

### **Breach of Express Warranty (Against Gukita)**

84. Plaintiff realleges and incorporates all preceding paragraphs.

85. Gukita made express warranties to Plaintiff and NutraVibe Purchaser Class members by affirmatively representing that Neuro-Peak supports recall, productivity, focus, memory, concentration, everyday sharpness, and optimal brain support.

86. Those representations became part of the basis of the bargain. Plaintiff and Class members purchased Neuro-Peak in reliance on the representations and expected to receive a product capable of providing the represented cognitive benefits.

87. Gukita breached the express warranties because the NutraVibe Neuro-Peak product was not as represented and was not substantiated as capable of providing the advertised cognitive benefits.

88. Plaintiff and NutraVibe Purchaser Class members were damaged because they paid money for a product that was not as warranted and was worth less than represented.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment / Quasi-Contract (Against Gukita)

89. Plaintiff realleges and incorporates all preceding paragraphs.

90. Gukita received money from Plaintiff and NutraVibe Purchaser Class members through the sale of Neuro-Peak.

91. Gukita's retention of that money is unjust because NutraVibe not only made its own false or inadequately substantiated product-level claims, but also, on information and belief, knowingly captured and monetized consumer demand generated by Aspen Brass's deceptive NeuroPeak campaign. Plaintiff is a concrete example: Aspen Brass's advertising induced him to search for NeuroPeak, and NutraVibe's materially similarly named product and overlapping cognitive claims converted that induced demand into the purchase from which Gukita benefited.

92. Equity and good conscience require Gukita to restore the money wrongfully obtained from Plaintiff and Class members.

93. Plaintiff pleads this cause of action in the alternative to other claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, prays for judgment against Defendants as follows:

a. Certifying this action as a class action, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

b. Declaring that Defendants' challenged conduct is unlawful, unfair, fraudulent, false, misleading, and deceptive;

c. Awarding restitution and other equitable monetary relief against each Defendant to the extent permitted by law and traceable to money or property acquired from Plaintiff or the applicable Class;

d. Awarding damages where available, except that Plaintiff presently seeks only injunctive relief under the CLRA and will amend after the statutory notice period to seek CLRA damages if appropriate;

e. Enjoining Aspen Brass from disseminating, authorizing, ratifying, or knowingly accepting the benefits of fabricated-news, AI/deepfake, synthetic-endorsement, or misleading cognitive-benefit advertising for NeuroPeak, and enjoining Gukita/NutraVibe from knowingly capturing or monetizing consumer demand generated by such advertising through materially confusing Neuro-Peak naming or false or misleading cognitive-performance representations;

f. Awarding pre-judgment and post-judgment interest;

g. Awarding attorneys' fees and costs where permitted by law; and

h. Awarding such other and further relief as the Court deems just and proper.

Dated: August 31, 2026

PACIFIC TRIAL ATTORNEYS, APC

By: */s/ Scott J. Ferrell*
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Class